Smith *v.* Combs.

THOMAS SMITH and JAMES S. PARKER, administrators of
Sarah G. Parker, deceased,

*v.*

WILLIAM S. COMBS et al.

1. Where an executor mingles trust moneys with his own, or invests them in
personal or real estate, his entire estate, either in his own hands or in the
hands of his administrators, will be liable for the payment of such funds in
preference to his own creditors.

2. In such case, in making payment of his own indebtedness, the presump-
tion is, that he disbursed his own moneys and retained the moneys held in
trust.

3. In case of insolvency, the *cestui que trust* is entitled to be first paid.

4. The statute of limitations will not be applied in equity to an express-
trust unless it appears that the trustee has held the funds claimed, adversely,
for the statutory period.

5. The rule to bar creditors does not embrace the claims of *cestuis que trust*
so long as trust property or money can be traced.

6. The statutory presumption of death of a person will not arise untiL
all reasonable doubt of his death, at a given time, is removed. As to when
such person was last heard from, the testimony of those who knew him,
and especially relatives or members of the same family, is entitled to much
greater weight than the testimony of those who did not know him, but had
simply heard of him.

On final hearing on pleadings and proofs.

*Mr. Samuel C. Cowart,* for the complainant.

*Mr. Acton C. Hartshorne,* for the administrators of Joseph
Combs, deceased.

*Mr. Frank P. McDermott,* for Samuel Combs

BIRD, V. C.

John Reid died in 1861, leaving a last will and testament, in
and by which he disposed of his estate, amongst other things
giving to Aaron Combs, a nephew, $1,250, and to Samuel

·Combs, brother of said Aaron, $1,250, the interest thereof to be paid to him during his natural life, and upon his death the principal to his issue if he should leave any, but if not, to his said brother Aaron. He appointed three persons his executors. Two ·of them died. At this time, Joseph Combs, the remaining ·executor, was left in possession of the estate. He died in 1876; not yet having administered the entire estate. He had paid the interest due upon the legacy of Samuel Combs every year, and taken receipts therefor. He had paid numerous other legacies provided for in the will, and had taken receipts for the same. He had not paid the legacy given to the said Aaron Combs. I ·think this is perfectly clear, whatever may be regarded as the proper application of the statute of limitations, or the practice in this court with respect to the rule by way of analogy.

As intimated, I think it cannot be doubted but that at the time of his death Joseph Combs had in his possession several thousand dollars of the estate of John Reid, deceased. · William S. ·Combs, his administrator, and Lydia M. Combs, his administratrix, obtained the ordinary rule to bar creditors, and in due time had it made absolute. From time to time they made distribution of the assets of his estate amongst his creditors. In the year 1884 they made application to the orphans court for the ·sale of lands for the payment of· his debts. The lands were sold. In the next year they took such steps as to have the ·court declare the estate of Joseph Combs insolvent. In 1889 they filed their final account in the orphans court. The creditors ·of the said Joseph Combs were not then all paid. This account showed a balance in their hands, at that time, of $4,927.70. ·John Allen filed exceptions to their account. He was a creditor. The complainants took an assignment of his claim and withdrew the exceptions, so that there is no longer any controversy as to the amount in the hands of the administrators of Joseph Combs, deceased.

Sarah G. Parker died March the 6th, 1884. Thomas Smith and James S. Parker were made administrators of her estate. They claim that they, as such administrators, are entitled to the whole of the amount now in the hands of the administrators of

Joseph Combs, deceased. The said Sarah G. Parker was made
residuary legatee under the will of the said John Reid, and her
administrators claim that all of the said moneys must be consid-
ered residue, or at least so much of them as will be required to
satisfy the principal and interest of the legacies given to the said
Aaron Combs and the said Samuel Combs. On the other hand,
the administrator of Joseph Combs insists that the said moneys
do not belong to the estate of John Reid, but to the estate of
Joseph Combs, and that his creditors are entitled to the whole
fund.

Three questions are presented : *First*—Have these funds been
identified as trust funds? *Second*—Have they, or any part of
them, become residue? and, *third*—Who are entitled to them?

My judgment is that they are trust funds. It is undisputed
that Joseph Combs, after he became executor of John Reid,
deceased, received large sums of moneys belonging to the estate
of his testator. About that time, and very soon after he received
large portions of these moneys, he purchased bank stock, which
he held at the time of his death. There can be no reasonable
doubt whatever but that this stock was purchased with this trust
money. It is in vain that I have searched for any application
of a like amount of moneys in discharge of any of the provis-
ions made by the will of John Reid, deceased. He had not the
means of his own with which to buy this stock. No one, con-
sidering the nature of his private business and the amount of
his real and personal property, as developed in the schedule to
the application by his administrators for an order directing them
to sell lands, can come to any other conclusion than that his
resources were so limited and so much demanded by his own
business as to compel the conviction that he did not use his own
money to purchase the stock referred to. Therefore, when it is
considered that he had these trust moneys, and that there is no
evidence that he made any other application of them, and that
numerous vouchers are produced showing the proper application
of other trust moneys according to the will of John Reid, the
mind may safely be at rest on this point.

However, it is, nevertheless, urged that there are no ear marks by which the moneys which came to the hands of Joseph Combs, deceased, can be traced and distinguished from any other moneys, and that, consequently, it is impossible to say the balance·now in the hands of his administrators is trust money. If this be the criterion, then it is only necessary for any person acting in a fiduciary capacity to convert all the estate which he has in charge into money, and mingle it with his own, and become insolvent, in order to deprive· his *cestuis que trust* of their rightful claims, and give his creditors an equal benefit with the *cestuis que trust*. I think, in case it can be shown that a trustee has converted portions of his trust estate into money or has used trust funds for the purpose of purchasing personal property and taking the title thereto in his own name, and again converting that into money, or where it has been converted into money by· his administrator and there is no uncertainty in either event as to ·the amount, whatever funds or estate may be left in his hands or in the hands of his administrators should be regarded as representing the trust until it is fully satisfied, and this even against creditors, unless it be made manifest that injustice will be done them. Lewin in his work on *Trusts and Trustees, Vol. II. p. 894*, says:

"It may be said that the trust money has, like water, run into the general mass and become amalgamated, and therefore the *cestui que trust* has no lien. But clearly this cannot be maintained, for suppose a trustee, partly with his own money and partly out of the trust fund, to have purchased an estate. It cannot be predicated of any particular part of the estate that it was purchased with the *cestui que trust's* money, and yet the *cestui que trust* has a lien upon the whole of the amount that was misemployed. And it follows in the other case, that though the identical pieces of coin cannot be ascertained, yet, as there is so much belonging to the trust in the general heap, the *cestui que trust* is entitled to take so much out."

The same author again says that trust funds will be followed through all the ramifications of the trade· or business; or if deposited in bank with private funds will be separated from the latter and given to the beneficiary. *2 Perry Trusts* § *1076 ; National Bank* v. *Insurance Co., 104 U. S. 54; Bank of America* v. *Pollock, 4 Edw. Ch. 215 ;. Third National Bank of*

*St. Paul* v. *Stillwater Gas Co., 36 Minn. 75 ; Wilkins* v. *Stevens, 1 Younge & C. 431 ; Pennell* v. *Deffell, 4 DeG., M. & G. 372.*

On this head, one suggestion more deserves attention. It is claimed that there is nothing to show that these trust moneys are invested in real estate which was sold by the administrators, the proceeds of which constituted the funds or a portion of the funds, at least, now in the hands of the administrator of Joseph Combs for distribution. This claim ought not to prevail; for the administrators of Joseph Combs, since his death, and he in his lifetime, encouraged the legatees in the belief that he was possessed of the money due to them under the will of the testator. He and they not only paid to Samuel Combs the interest due to him under the will until application was made to the orphans court in 1884 for the sales of lands to pay debts, but in the application which they then made for that purpose as administrators they distinctly set forth the claim of the said legatees under said will as two of the liabilities against the estate of the said Joseph Combs. That clear statement of liability certainly estopped the said administrators. After that they could not deny but that Joseph Combs was possessed of the trust funds in question. Nor could they deny the liability of his estate to discharge them in full, after once acknowledging the possession of them. This is as applicable to the real as to the personal estate, since the administrators have taken the attitude which they have in asking for a sale of the land to pay these trust obligations as well as other claims. And it also appears that since the said application the administrators continued to pay to Samuel Combs the interest upon the entire legacy given to him by the testator for at least four years after the sale of the land. And it seems to me that the creditors were equally bound by the record. The very object of the statute in requiring the statement of claims upon application for sale of real estate, is to give notice to all persons interested of the amount and nature of demands against the estate. It was the duty of creditors to object to these claims so acknowledged by administrators, if they had any objections thereto. Not only are administrators and creditors estopped by the record, but

it is my judgment that the complainants in this case are estopped from alleging that these funds, being the proceeds of the sales of real estate in whole or in part, are not liable to the discharge of these legacies. Besides the conclusiveness of the record which they have allowed to stand unquestioned, by their bill they distinctly assert, and by their counsel insist, that these moneys were not only trust moneys, but were liable to the discharge of these legacies, claiming that they, as representatives of the residuary legatee, are entitled to them.

It being established that Joseph Combs, as such executor, at the time of his death, was possessed of sufficient moneys to discharge the legacies in question, and that his estate is liable therefor, although no particular fund can be identified as representing that trust, the question still remains, his estate being insolvent, whether the legatees can claim the whole amount of their legacies to the prejudice of his creditors. Lewin lays down the rule thus: "If a (sole) trustee die insolvent and indebted to the trust estate, the personal representative of the trustee has a right of retainer in respect of the debt to the trust as against other creditors, and on the *cestuis que trust* requiring him to exercise such right of retainer, he is bound to do so." *2 Lew. 907.* *Sander* v. *Heathfield, 19 L. R. Eq. Cas. 21; People* v. *The City Bank of Rochester, 96 N. Y. 32; Cragie et al.* v. *Hadley, 99 N. Y. 131; Van Alen* v. *American National Bank, 52 N. Y. 1; National Bank* v. *Insurance Co., supra; Peak* v. *Ellicott, 30 Kan. 156; McLeod* v. *Evans, 66 Wis. 401; Independent District of Boyer* v. *King, 80 Iowa 497; Davenport Plow Co.* v. *Lamb, 80 Iowa 722; Ernest* v. *Croysdill, 2 De G., F. & J. 175.* This is doing simple justice to the beneficiary, and it is doing no injustice to any other. It is taking nothing from the trustee or his estate which, in any equitable sense, belongs to him. Nor is it lessening the security which his own personal creditors have a right to look to because the trust estate was no part of his. In every such case, the fair and reasonable presumption is, that the trustee used and disposed of his own assets in his own personal transactions, and retained the assets which he held in trust.

It appearing, therefore, that there are trust funds in hand to
be disposed of, the next inquiry is, in what direction shall they
go? Whether these funds became residue and are to be distrib-
uted as such, depends upon the question whether or not Aaron
Combs, one of the legatees, died in the lifetime of the testator,
so that the legacy to him lapsed. The complainants, as admin-
istrators of Sarah G. Parker, deceased, who was the residuary
legatee, claim that the said Aaron Combs died in the lifetime of
the testator, while the administrators of Joseph Combs insist
upon the contrary. In case he died, the administrators of Sarah G..
Parker, deceased, will be entitled not only to the legacy given to
the said Aaron, but also sooner or later to the legacy given to
the said Samuel, for, in case Samuel dies without issue, then
the legacy given to him was given to his brother, the said
Aaron. It is true the said Samuel is still living, but counsel on
both sides proceeded with the argument upon the presumption
that on account of his advanced age he would die without issue.
If this should so result—that is, Samuel die without issue—and
it should also be determined that Aaron survived the testator,
then it is quite clear that there is no one in court to represent
these funds and to claim the amount due on the legacy to Aaron
and the principal of the legacy to Samuel upon his death. If
Aaron survived the testator and Samuel should die without
issue, then Aaron's administrator is the only one who can claim
and collect these legacies. *Post* v. *Herbert's Exr., 12 C. E. Gr.
540.*

The burden of establishing the presumption raised by the
statute is upon the complainant, who makes the assertion that
Aaron Combs had not been heard of for more than seven years
before the death of the testator. I am not satisfied that he has
fully met this responsibility. Under such circumstances, I think
before the court is justified in presuming the death of a person
because of his absence, all reasonable doubt of his being alive at
a given period ought to be removed. In this case, Mr. Smith,
one of the witnesses produced by the complainant, very satisfac-
torily fixed the period of time when he was first employed in a
store in Freehold in which the said Aaron Combs had previously

been employed, and from which, as the witness was informed, he had just then gone. This witness says that he understood that Aaron Combs then left for the west, and that he never heard of him afterwards. It is important to note that this witness never knew the said Combs.

Another witness, Mr. Burtis, is called, who knew Aaron Combs, and who says he did not leave New Jersey until 1854 or 1855, and fixes the time of his leaving by his own business changes and engagements. The fact that he knew Aaron and that he had equal opportunities with the former witness of acquiring information, and the like if not greater facilities for fixing the event and circumstances connected with him in his mind, would seem to give his testimony as great, if not greater, force than the former. These considerations alone, it seems to me, raise the doubt which prevents the application of the presumption claimed by the complainant.

But neither of the witnesses referred to is a member of the Combs family, or the most distant relative, and hence their testimony cannot be regarded as so significant as that of a near relative or member of the same family. But Samuel Combs, a brother of Aaron, was offered as a witness, and his statements upon the whole corroborate the declarations of Mr. Burtis. While he says his brother was in the store at Freehold until he arrived at the age of twenty-one, which was in the year 1851, and then he left and went west, he afterwards makes such statements of facts respecting the transactions of his brother Aaron as to show most conclusively that Aaron did not go west immediately upon his arriving at age. In reading his testimony, I can come to no other conclusion than that, according to the best of his recollection, his brother left New Jersey in 1854 or 1855, or that in one or the other of those years he was heard from. When I review the testimony of these two witnesses, I think I am justified in concluding that Aaron did not leave New Jersey until 1854 or 1855, and that he went to California and was there long enough to engage in business, and that after he had so engaged in business he was heard from by members of his family in New Jersey. If this be so, then it is quite clear that seven years did

not elapse between the time when he was last heard from and the time of the death of the testator, John Reid.

It has been urged that the statute of limitations ought, by force of analogy, according to the practice of this court, to be applied to the claim of the said Aaron Combs. This doctrine has never been applied to express trusts in New Jersey. The trust has always been acknowledged, or at least not a shadow of resistance to it, or repudiation of it, by the trustee, and conse-quently there is no foundation for the application of the doc-trine. *Gutch* v. *Fosdick, 3 Dick. Ch. Rep. 353; Dyer* v. *Waters, 1 Dick. Ch. Rep. 484; Bechtold* v. *Read, 4 Dick. Ch. Rep. 111.*

Nor have these legatees lost their right to recognition and pro-tection because they did not file any written claim or demand with the administrators of Joseph Combs, deceased, under the statutory rule to bar creditors. I think no one will contend that the stat-ute referred to was designed to embrace the rights of *cestuis que trust.* Trust property of every description is specifically held by the trustee for the owner, and not by him as his own property, for the benefit of his creditors. This rule is illustrated by the following cases, in addition to the foregoing: *Hoffman* v. *First National Bank of Jersey City, 17 Vr. 604; Thompson* v. *Glou-cester Savings Institution (N. J.), 8 Atl. Rep. 97; Importers' and Traders' Bank* v. *Peters et al., 123 N. Y. 272.*

I will advise that the costs of these proceedings be first paid, and that when an administrator of the said Aaron Combs shall have been appointed, that the amount due upon his legacy be paid to him; that when a trustee for the legacy, the interest of which is given to the said Samuel Combs, shall have been appointed, the said principal be paid to him; and that the bal-ance of the said moneys be paid to the said complainants as assignees of the said John Allen and the other creditors of the said Joseph Combs, deceased, in proportion to their several demands.