111 N.J. Super. 353 (1970)
268 A.2d 330
ASSOCIATES DISCOUNT CORPORATION, PLAINTIFF,
v.
FIDELITY UNION TRUST COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 23, 1970.
*355 Mr. Milton S. Kramer for plaintiff (Messrs. Kramer & Kramer, attorneys).
Mr. William I. Riker for defendant (Messrs. Riker, Danzig, Scherer & Brown, attorneys).
MEANOR, J.C.C. (temporarily assigned).
On February 7, 1963 a financing statement between Mort Maltz, Inc., a truck dealer, as debtor, and plaintiff, Associates Discount Corporation, as secured party, was filed with the Secretary of State. N.J.S.A. 12A:9-302. This statement covered new and used motor vehicles and all proceeds thereof. A continuation of this statement was filed August 16, 1967. N.J.S.A. 12A:9-403.
From May 8 to December 23, 1968 plaintiff advanced a total of $60,300 to Mort Maltz, Inc. receiving in return promissory notes and security agreements with respect to nine trucks. No amount of this sum has been paid.
During December 1968 and January 1969 Mort Maltz, Inc. sold nine trucks, the subject of plaintiff's liens, and in January, 1969 deposited the proceeds thereof in an account maintained with defendant Fidelity Union Trust Company. Mort Maltz, Inc. had the right under its agreements with plaintiff to sell the trucks free from any security interest. The total cash proceeds derived from the nine sales were $37,750. Although not brought out, the difference between this amount and the total of plaintiff's advances may be explained by trade-in allowances or, perhaps, the selling of the trucks on a time-payment basis. The affidavit submitted by plaintiff and the exhibits annexed thereto clearly *356 trace the proceeds of these nine sales to the Mort Maltz, Inc. account with defendant.
On May 3, 1963 defendant Filedity Union Trust Company filed with the Secretary of State a financing agreement between it as secured party and Mort Maltz, Inc. as debtor. This agreement covered the debtor's inventory of new and used trucks, truck-tractors and trailers and all proceeds thereof, and was continued by a filing on April 1, 1968. Pursuant to this agreement defendant advanced to Mort Maltz, Inc. 50% of its cost of certain used trucks, none of which were the subject of plaintiff's financing agreement.
For each truck financed by defendant, the debtor executed a demand note and chattel mortgage. Defendant checked the debtor's inventory monthly, and on December 31, 1968 found that two items covered by its financing agreement had been sold for a total of $7,500. Defendant demanded payment but a Mr. Maltz, apparently the controlling officer of the debtor corporation, was hospitalized and no one else had authority to sign checks. Mr. Maltz died January 30, 1969 and on January 31, 1969 defendant learned that an additional three vehicles covered by its agreement had been sold and another vehicle had been stolen. Defendant then ordered the account maintained by the debtor with it be charged with the debt of $36,500 that had been incurred with respect to these six items, plus $541.59 interest or a total of $37,041.59. The instruments of security applicable to these six items (except, of course, for the statements filed with the Secretary of State) were returned to the debtor or destroyed at the time the debtor's account was charged.
Plaintiff brings this suit to recover the $37,041.59 charged by defendant against the Mort Maltz, Inc. account on the theory that its lien had priority to the bank's right to set-off, since the funds against which the bank setoff were clearly the proceeds of sales of vehicles covered by its security agreement. Defendant bank, while it does not acquiesce in plaintiff's tracing of these funds, does not offer any contrary proof and does not contend that it setoff against funds *357 which were the proceeds of sales of items upon which it held a security interest. Both parties have moved for summary judgment.
The filed financing statement of plaintiff covered proceeds. N.J.S.A. 12A:9-306(3) (a). Under N.J.S.A. 12A:9-306(2) plaintiff's security interest continued in any identifiable proceeds of the collateral, "including collections received by the debtor," and therefore continued in the identifiable proceeds of sales that were deposited in defendant bank. Any withdrawals by the debtor from this account will be presumed to be of its general funds, leaving intact, so far as possible, the funds received from sales of collateral covered by plaintiff's security agreement. Smith v. Combs, 49 N.J. Eq. 420 (Ch. 1892); General Motors Acceptance Corp. v. Larson, 110 N.J. Eq. 305 (Ch. 1932).
Defendant relies on N.J.S.A. 12A:9-104(i), which provides that
[T]his Chapter does not apply * * *

* * * * * * * *
(i) to any right of set-off * * *
This section, however, cannot mean that a general creditor, as the bank is here with respect to the funds in question, may abrogate a perfected security interest simply by having a right to and opportunity for a set-off. All this section means is that a right of set-off may exist in a creditor who does not have a security interest. See Gilmore, Security Interests in Personal Property (1965), at 315-316, in which it is said concerning the "set-off exclusion" of N.J.S.A. 12A:9-104(i):
This exclusion is an apt example of the absurdities which result when draftsmen attempt to appease critics by putting into a statute something that is not in any sense wicked but is hopelessly irrelevant. Of course a right of set-off is not a security interest and has never been confused with one. The statute might as appropriately exclude fan dancing. A bank's right of set-off against a depositor's account is often loosely referred to as a "banker's lien," but the "lien" usage has never *358 led anyone to think that the bank held a security interest in the bank account.
Defendant also cites Briscoe Co., Inc. v. Suburban Trust Co., 100 N.J. Super. 431 (App. Div. 1968), and American Lumbermen's, etc., Co. v. Bradley Const. Co., 127 N.J. Eq. 500 (Ch. 1940), affirmed 129 N.J. Eq. 278 (E. & A. 1941), for the proposition that it may setoff against funds in the general account of a depositor in the absence of actual knowledge on its part that the funds in the account were subject to a security interest. However, these cases, if applicable, are subject to the superior authority of the Legislature which, by enacting the Uniform Commercial Code, continued a plaintiff's security interest in the identifiable proceeds of sales of the collateral. N.J.S.A. 12A:9-306(2) See Annotation, "Bank's right to apply third person's funds, deposited in debtor's name, on debtor's obligation," 8 A.L.R.3d 235, 242 (1966).
Since there is no "genuine issue as to any material fact," R. 4:46-2, this matter appropriately may be resolved on the present cross-motions for summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954). Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted and judgment may be entered in favor of plaintiff in the amount of $37,041.59.