**S.E.L. MADURO (FLORIDA) INC.,**
Plaintiff-Appellee,

v.

**STRACHAN SHIPPING COMPANY,**
Defendant-Appellant.

No. 85–5826.

United States Court of Appeals,
Eleventh Circuit.

Oct. 8, 1986.

C. Robert Murray, Canning & Murray, Miami, Fla., for defendant-appellant.

Hayden & Milliken, Robert W. Blanck, Miami, Fla., for plaintiff-appellee.

Before RONEY, Chief Judge, HENDER-SON*, Senior Circuit Judge, and AT-KINS**, Senior District Judge.

ATKINS, Senior District Judge:

This case involves the competing claims of the parties under Article 9 of the Uniform Commerical Code (U.C.C.), Fla.Stat. ch. 679, which deals with secured transactions. Both parties claim they hold a security interest in certain freight receivables which is superior to any interest which may be held by the other party. The district court found that the plaintiff/appellee, S.E.L. Maduro (Florida), Inc. (Maduro) had an enforceable security interest good against the defendant/appellant, Strachan Shipping Company (Strachan) as to the freight receivables on voyage 5134 but not on voyage 6126. The appellant is appealing the district court's decision involving the freight receivables on voyage 5134.

This court finds that Linea Manaure C.A. (Manaure), an ocean carrier of cargo, had rights in freight receivables from voyage 5134 that it could and did assign to Maduro as its agent. Maduro had an unperfected attached security interest in freight receivables on voyages commencing after September 17, 1982, less servicing disbursements. Strachan is an unsecured creditor vis-a-vis Maduro for freight receivables on voyages after September 17, 1982. Strachan's position is, thus, inferior to Maduro's interest after that date. The district court's final judgment is *AFFIRMED* in all aspects.

FACTS

The facts are not in dispute. On January 8, 1981, Strachan entered into a general agency agreement with Manaure effective April 1, 1981. An addendum to that agreement was executed by the parties on May 1, 1982, extending Manaure's credit limit from Strachan to $3,000,000.

On September 2, 1982, Maduro entered into a general agency agreement with Manaure. This agreement was not to take effect until termination of the Strachan agreement, which had a ninety day termination clause. Manaure telexed Strachan on September 10, 1982 formally notifying them of cancellation of the agency contract with the ninety day termination period beginning that day.

The next two Manaure voyages after the notice of termination was given to Strachan were voyages 6126 and 5134. Strachan worked these voyages, but refused to provide additional credit to Manaure to finance these voyages. Manaure contacted Maduro and requested that they undertake to finance these voyages. Maduro issued checks to Manaure for financing of these specific voyages.

On September 23, 1982, Maduro was requested by Manaure to assume all general agency and stevedoring duties for Manaure because of the inability of Manaure and Strachan to resolve their differences. From this day until the eventual ceasing of operations by Manaure, Maduro was their general agent and stevedore. On September 24, 1982, Manaure issued a document entitled "Important Notice Memorandum" to all shippers, freight forwarders, and its customers, notifying them that effective immediately all proceeds for freight monies or other charges owed to Manaure should be sent to their new agent, Maduro.

As part of the agreement entered into by Manaure and Maduro, Manaure made a written assignment, dated September 29, 1982, of all right, title and interest in all

---

* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation

receivables due or to become due represented by Manaure freight manifests dated subsequent to September 17, 1982, to Maduro. The freight manifest for voyage 6126 was dated on September 17, 1982 and the freight manifest for voyage 5134 was dated subsequent to September 17, 1982.

Sometime in November, 1982, Manaure and Strachan executed a document entitled "Agreement." The document provided that by December 20, 1982 each party would make claim against the other for those amounts either claimed they were owed. On December 20, 1982, after a reconciliation was to have taken place between the parties, the company found to be deficient would make payment pursuant to that deficiency. However, there was no evidence showing that this accounting ever took place, and the agreement was never implemented in full.

Maduro collected some of the freights from voyages 6126 and 5134. Maduro made demand upon Strachan for freight monies Strachan had collected from voyages 6126 and 5134. Strachan alleged they were entitled to those proceeds and refused to pay these monies to Maduro.

## THE DISTRICT COURT CORRECTLY HELD THAT MADURO'S UNPERFECTED SECURITY INTEREST HAD PRIORITY OVER THE GENERAL UNSECURED CLAIM OF STRACHAN

■ Article 9 of the Uniform Commercial Code, Fla.Stat. ch. 679, does not require that Maduro, as a holder of an unperfected security interest, advise Strachan, a general unsecured creditor, of its agreement. Strachan has not cited any case law to support its counterclaim that Maduro's security interest must fail because Strachan did not have actual knowledge of the September 29, 1982 assignment. Fla.Stat. § 679.301 governs the rules of priority of an unperfected security interest. The district court held that Maduro had an unperfected security interest in voyage 5134. In order to perfect their security interest Maduro was required to file its assignment. Fla.Stat. § 679.304(1).

■ Since Maduro did not perfect its security interest by filing, the trial court looked to Fla.Stat. § 679.301 which governs third parties whose interest would have priority over Maduro's unperfected security interest. The district court found that Strachan's interest as an unsecured creditor could not be superior to that of Maduro's unperfected security interest in voyage 5134.

In addition, Maduro asserts that Strachan's purported lack of knowledge concerning the assignment was the result of their failure to inquire into the relationships of the parties. Strachan, through its representative, admits receiving a notice sent by Manaure to all shippers, freight forwarders and its customers on September 24, 1982. *See* Deposition of John Tureman, Jr. at 36. The notice advised these clients that all freights were to be made payable to S.E.L. Maduro as new agent for Manaure. Strachan's local regional manager testified that he made no inquiry of the local Manaure representatives concerning the reason for this circular. *Id.* This circular should have placed Strachan on notice that Maduro had assumed the financing of Manaure voyages due to Strachan's admitted refusal to do so and Maduro would receive the freight payments, as Strachan had been doing before them.

The district court did not err in its finding that Strachan did not have a security interest in voyage 5134. If Strachan did have a security interest then the first party to perfect that interest (or possibly to give notice to the debtor) would have a prior right. Fla.Stat. § 679.312(5). Since Strachan was nothing more than an unsecured creditor of Manaure, the district court did not err in finding that Strachan does not have priority over Maduro's unperfected security interest.

## THE ASSIGNOR HAD FULL RIGHTS TO ITS ACCOUNTS RECEIVABLE AND VALIDLY ASSIGNED THOSE RECEIVABLES TO MADURO AS ASSIGNEE

■ The district court held that Strachan had no prior right to the freights of voyage

5134 and Manaure could, therefore, freely assign the receivables to Maduro. The appellant argues that Manaure's assignment to Maduro conveyed no rights to the freight receivables. Strachan's claim is without merit. The freights of each particular voyage were always Manaure's to dispose of unless assigned or otherwise pledged by a security instrument. As between Maduro and Strachan the district court correctly held that only Maduro held a security interest in those freights. Thus, Strachan cannot claim a prior right to the freights of Manaure merely because Manaure was purportedly indebted to Strachan.

In order for Strachan to claim a right in the freights of voyage 5134 they must prove a security interest as opposed to the status of a general unsecured creditor. Strachan has not cited any authority to support its contention that a general unsecured creditor has a superior right to a debtor's account receivables over the assignee of those receivables. In the absence of such controlling authority, the decision of the district court must be affirmed.

STRACHAN HAD NO SECURITY AGREEMENT WITH REGARD TO THE FREIGHTS AND ITS PURPORTED "AGREEMENT" COMPLETELY FAILED TO COMPLY WITH THE SPECIFIC REQUIREMENTS OF FLA.STAT. ch. 679 FOR VALID SECURITY AGREEMENTS

Strachan asserts that their interest in the proceeds was perfected by possession. The proceeds are perfected, however, only if the original collateral was perfected. One must first have a security interest before that interest can be perfected by possession or otherwise. Strachan must prove a valid security interest in the freights before its claim can be perfected. It has not done so.

■ Strachan did not have a security agreement with regard to the freights, and its purported "agreement" completely failed to comply with the specific requirements of the Uniform Commercial Code for valid security agreements. Fla.Stat. § 679.203 provides that a security interest is not enforceable against third parties unless the debtor has signed a security agreement which contains the description of the collateral. To be a "security agreement," the agreement must be written, contain a debtor's signature, and contain a description of the collateral. *See also,* Official Comment 1, U.C.C. § 9–203. An added step is necessary for the agreement to "attach": value must be given and the debtor must have rights in the collateral. Fla. Stat. § 679.203(1). Fla.Stat. § 679.105 defines a security agreement as an agreement which creates or provides for a security interest and incorporates § 679.203 requirements of a writing signed by the debtor, and a reasonably detailed description of the collateral. *See In re Fiberglass Boat Corp.,* 324 F.Supp. 1054 (S.D.Fla.1971). On this issue the trial court concluded:

> The fact is that in order to obtain a security interest, there must be a security agreement in writing between the parties. That writing must express the intent of the parties to create a security interest. In this case, although there is a writing between the parties, the general agency agreement and addendum, that writing does not express an intent to create a security interest, and therefore no security interest is created by it.

*S.E.L. Maduro (Florida), Inc. v. Strachan Shipping Co.,* No. 83–179–Civ–NESBITT at 11.

Each of the documents entered into between Strachan and Manaure falls short of meeting the necessary legal criteria for security instruments in and of themselves. The documents combined do not form a security agreement. The facts and testimony bely the purported "intent." The testimony of John Tureman, the local manager for Strachan, was that Strachan on numerous occasions requested that Manaure provide them with an assignment for the loans made to Manaure because Strachan was concerned about the security of these loans. *See* Deposition of John Tureman, Jr. at 27. Strachan never received an assignment from Manaure. *Id.* at 28. It is clear that there are certain legal criteria

that are required for a security interest to be created. Intentions are not sufficient. There must be an actual meeting of the minds between the contracting parties, and agreement as to terms which are subsequently reduced to writing and comport with the requirements of the Uniform Commercial Code. White and Summers, *Uniform Commercial Code*, § 23–3 (2d ed. 1980). Strachan cannot point to any specific writing which in and of itself would support their allegations of a proper security agreement.

## STRACHAN WAS AN UNSECURED GENERAL CREDITOR OF THE ASSIGNOR AND HAD NO SECURITY INTEREST IN MANAURE'S ACCOUNTS

Strachan further argues that Maduro's alleged security interest in the account receivable is not enforceable against Strachan and did not attach. This argument is essentially the same as Strachan's assertion that Manaure had no rights to its ocean freights as long as they were indebted to Strachan. Strachan contends that because Manaure purportedly owed them money they had the right to collect all of Manaure's receivables regardless of whether Strachan financed those receivables. This is not the case. In the notice dated September 24, 1982, from Manaure they advised all shippers, freight forwarders, and their customers that "all freight proceeds, monies or other charges owed to Linea Manaure should be sent to their new agent, S.E.L. Maduro (Florida), Inc." Clearly, Manaure never waived its interest in collecting these receivables for the benefit of Strachan. As Strachan had no security interest in these freights, their only claim to them was as a general unsecured creditor. In the case of *Peninsula State Bank v. United States*, 211 So.2d 3, 5 (Fla.1968), the Florida Supreme Court held:

> The only way a simple judgment creditor can reach the accounts receivable owed to its debtor is by way of separate and independent judicial proceedings to establish the debt and collect for himself

the amount due thereon either by way of garnishment proceedings or, in the proper case, by suit brought in his own name by the assignee thereof.

Strachan did not seek to reduce Manaure's debt to judgment. Therefore, Strachan had no specific right in the freights for voyage 5134. At best, Strachan was an unsecured general creditor whose rights were subservient to Maduro's unperfected security interest in the freight of voyage 5134. The district court correctly applied the law to the undisputed facts of this case.

## STRACHAN CANNOT USE ITS PURPORTED SETOFF TO ABROGATE A VALID SECURITY INTEREST IN THE ACCOUNTS RECEIVABLE

 Finally, the appellant argues they had a right of setoff which is superior to the Article 9 rights of Maduro. Strachan had no right of setoff which was superior to the secured interest of Maduro. The appellant cites the case of *Citizens National Bank of Orlando v. Bornstein*, 374 So.2d 6 (Fla.1979) to support its position concerning its alleged security interest and possible setoff. The court in *Citizen's National Bank* when discussing Fla.Stat. § 679.104(9)[1] stated: "The section means simply that a right of setoff may exist in the creditor who does not have a security interest." *Id.* at 10.

Strachan's citation of the court's holding is incomplete. The remaining portions of the court's holding states:

> The section means simply that a right of setoff may exist in a creditor who does not have a security interest. It does not affect the exclusion of this transfer from Article 9 coverage. *Associated Discount Corp. v. Fidelity Union Trust Co.*, [111 N.J.Super. 353] 268 A.2d 330, N.J.Super., N.J.L. (1970).

The *Associated Discount Corp.* citation is crucial in understanding the *Citizens National Bank* case. In *Associated Discount*, the court held, with regard to the setoffs:

1. Fla.Stat. § 679.104(9) excludes application of Art. 9 to the right of setoff.

This section, however, cannot mean that a general creditor, as the bank is here with respect to the funds in question, may abrogate a perfected security interest simply by having a right to and an opportunity for a setoff. All this sections means is that a setoff may exist in a creditor who does not have a security interest.

*Id.* 268 A.2d at 332.

Finally, the court in *Citizens National Bank* ultimately held against the party seeking a setoff against a security interest holder.

## CONCLUSION

For the reasons stated herein and for those stated in the district court's Findings of Fact and Conclusions of Law, the decision of the district judge is AFFIRMED.