230 N.J. Super. 126 (1988)
552 A.2d 1031
WILTON ENTERPRISE, INC. A CORPORATION, PLAINTIFFS,
v.
THE COOK'S PANTRY, INC. A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Special Civil Part, Bergen County.
Decided October 26, 1988.
*128 Arthur L. Nudelman for plaintiffs (Nudelman, Nudelman & Ziering, attorneys).
Robert S. Underhill for National State Bank (Mackenzie, Welt, Duane & Maher, attorneys).
No appearance by defendant.
EICHEN, J.S.C.
This is a motion for summary turnover of funds pursuant to N.J.S.A. 2A:17-63 following an execution and levy made upon the checking account of defendant, The Cook's Pantry, Inc. ("defendant") maintained at the National State Bank ("Bank") upon a default judgment entered in favor of plaintiff, Wilton Enterprise, Inc. The bank objects to the turnover of funds, claiming that at the time of the levy there were no funds in the account. Defendant has not appeared in the action and did not respond to the notice of motion. The facts have been developed by stipulation, through submission of affidavits, and the parties have waived their right to a plenary hearing.[1]
On December 9, 1987 plaintiff, a trade creditor of defendant, obtained a default judgment in the sum of $2,165. On Monday, January 11, 1988, at approximately 11:30 a.m., pursuant to a duly issued writ of execution, a levy was made on defendant's checking account in the sum of $2,403.94, this being the amount of judgment entered in favor of plaintiff together with interest, court, and execution, costs. The levy was made by Theodore *129 Solodare, an officer of the Superior Court, Special Civil Part, Union County, by serving the writ upon Sarah Glick, customer service representative, at the bank's Kenilworth branch. Although the levy was made at the Kenilworth branch, defendant's account was actually handled by a loan officer at the bank's Woodbridge branch.
It is the standard procedure of the bank when served with a writ of execution to have the branch where the levy is served call the branch or the account officer in charge of the customer's account to advise of the levy and, thereafter, send the writ of execution to that branch or officer. This procedure was not followed in this case inasmuch as no telephone notice was given by the Kenilworth branch to the Woodbridge branch. Instead the writ was mailed to the Woodbridge branch which did not receive it until Thursday, January 14, 1988. By that time defendant's account showed a zero balance.
On the date of the levy, a check drawn on defendant's checking account in the sum of $8,177.87 was presented to the bank for collection by Fidelity Union Bank which had paid the check on January 8, 1988 to the payee shown thereon. According to the bank, after a banking day begins, there is no way to determine if an account has a positive balance. The only data available is the amount on deposit as of the close of business on the preceding banking day. Although the bank claims it paid the check on January 11, 1988, it cannot state the exact time the check was presented for payment or the precise hour the check was actually paid. The levy, as we know, was made at 11:30 a.m.
The motion for a turnover order was filed pursuant to N.J.S.A. 2A:17-63 which provides as follows:
After a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, in an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution....
In the instant case, the bank, as garnishee, does not admit the debt to defendant. Essentially the bank's position is that at the *130 time the levy was made, it had already disbursed all of the funds in defendant's account. If the funds were so disbursed, then the order must be denied. If, however, there were funds in the account at the time of the levy, then the bank must turn the funds over to the officer for payment to plaintiff.
The Uniform Commercial Code ("code") offers fairly exact guidelines for resolving this dispute. N.J.S.A. 12A:4-303(1) essentially provides that any knowledge, notice, stop order, legal process or setoff comes too late with respect to a particular item if, by the time the knowledge, notice, stop order or legal process is received or served, the bank has made final payment of the item and a reasonable time for the bank to act thereon had expired. Conversely, such knowledge, notice, or, as in this case, legal process is considered timely with respect to a particular item if it is received or served before the bank has made final payment of the item.
The code addresses itself to the concept of "final payment" by providing that an item is "finally paid" when the bank has done any of the following, whichever happens first:
(a) paid the item in cash; or
(b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or
(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement. [N.J.S.A. 12A:4-213(1)]
Here, the levy was made on the morning of the same day that defendant's check was presented to the bank for payment. No assertion has been made by the bank that "final payment" under section 4-213 had been made at or before the precise time that the levy was made. The most it has been able to state is that the check had been presented and paid on January 11, 1988. "The statutory language [of section 4-213(1)] is oriented to time of payment, ... `Finally paid' suggests that act in a sequence of acts which establishes a time of *131 payment." Demos v. Lyons, 151 N.J. Super. 489, 498 (Law Div. 1977). Although the code requires a bank to settle an item before midnight of the day of receipt of the item, it does allow a bank to defer final settlement of the item until midnight of the following banking day during which time such settlement may be revoked. See N.J.S.A. 12A:4-301(1). It is important to observe that this was not a check presented for payment over the counter; it was an item winding its way through the bank collection process. The bank claims it cannot establish the exact time of payment of the check; nor, it contends, can it tell the exact amount on deposit in any account except by reference to the balance from the preceding day. This more than suggests that final settlement of all items are done at the close of business. Based on the foregoing, this court finds that, absent any specific proof of the exact time of payment of the check by the bank, a permissible inference can and shall be drawn that "final payment" of the check occurred after the levy was served at the Kenilworth branch. The failure to produce evidence as to the exact time of payment suggests that the bank had a conscious appreciation that any such evidence would or might be hurtful to its position. See Comment, Evid.R. 1(5) (Anno. 1988)
The question still remains, however, as to whether service on the Kenilworth branch was effective to constitute notice of the levy on the bank, specifically, on the Woodbridge branch where the account in question was maintained. N.J.S.A. 12A:4-106 provides that "[a] branch or separate office of a bank is a separate bank for the purpose of computing the time after which and determining the place at or to which action may be taken or notices or orders shall be given under this Chapter and under Chapter 3." Thus notice of the levy on the Kenilworth branch may be considered notice to the Woodbridge branch. The question as to whether that notice is effective for the particular transaction is answered by reference to N.J.S.A. 12A:1-201(27). That section provides in relevant part that such notice is effective.

*132 from the time when it would have been brought to the attention of the individual conducting the particular transaction if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines....
As noted above, the established procedure of the bank with regard to a bank levy is first to give telephone notice to the branch responsible for the account in question and, thereafter, to mail the writ of execution to that branch. In the instant case the Kenilworth branch failed to comply with its own reasonable routine in that it did not call the Woodbridge branch to advise of the levy in question. Such lack of compliance constitutes a failure on the part of the bank to proceed diligently to pass on the information to the branch conducting the transaction, e.g., settlement of the check. By its own lack of diligence, the check was paid, and the court finds that it was paid at a time when it should have known of the levy.
Accordingly, this court finds that plaintiff's levy upon defendant's bank account at 11:30 a.m. on January 11, 1988 preceded in time the bank's "final payment" of the check. Therefore, at the time of the levy, the bank had funds of defendant sufficient to satisfy the writ. Those funds constituted a debt of the bank to defendant and, as such, were subject to garnishment by plaintiff. This is not a situation where the bank was unable either to admit or to deny the existence of the debt. See Beninati v. Hinchliffe, 126 N.J.L. 587 (E. & A. 1941). Here all of the facts pertaining to "final payment" of the check lay peculiarly within the knowledge of the bank. Having failed to produce facts sufficient to raise a genuine issue as to the existence of the funds on deposit at the time of the levy, plaintiff is entitled to the entry of an order for turnover of the funds. The motion is granted. The bank is directed to pay to Officer Solodare the sum of $2,403.94.
NOTES
[1] See Nat. Cash Register Co. v. 6016 Bergenline Ave. Corp., 140 N.J. Super. 454 (App.Div. 1976).