657 A.2d 475

CITIBANK, SOUTH DAKOTA, N.A., PLAINTIFF,
v. LISA A. COFFEY, DEFENDANT.

Superior Court of New Jersey
Law Division Middlesex County
Special Civil Part

Decided June 14, 1994.

312

*Steven McCabe,* for the Plaintiff, Citibank, South Dakota, N.A., (*Pressler & Pressler,* attorneys).

*Michael A. Lampert,* for the Defendant, Lisa A. Coffey, (*McManimon & Scotland,* attorneys).

WOLFSON, J.S.C.

## I. *BACKGROUND*

The Plaintiff, Citibank, South Dakota, instituted a suit against the Defendant, Lisa Coffey, based upon her purported failure to pay charges incurred through her Citibank Visa card. A default judgment of $1,707.28 was obtained whereupon Plaintiffs located and levied upon her bank account with First Fidelity Bank, N.A. (the "Bank").

The issue raised in this case is whether the Bank may, prior to honoring the levy, extract an administrative fee attributable to that same levy.

In support of its claimed entitlement to deduct an administrative fee from its depositor's account prior to garnishing the levied amount, the Bank essentially argues that it holds a valid, perfected security interest in the account, and as such, has a right of "set-off" to the extent of the administrative fee.[1]

---

[1] The Bank suggests that the instant dispute should not be resolved in the context of a "turnover motion", but rather, should be adjudicated in the context of an entirely separate civil action. That contention is rejected as unnecessary and inefficient. *See, American Express Co. v. Vella,* 92 *N.J.Super.* 380, 382–383, 223 *A.2d* 515 (Law Div.1966), *affirmed,* 94 *N.J.Super.* 258, 227 *A.2d* 721 (App. Div.1967) ("There is no necessity for any additional suit where there is no dispute that the money was attached . . ."); *Piechowski v. Matarese,* 54 *N.J.Super.* 549, 553, 149 *A.2d* 632 (Law Div.1959). Neither the levy nor the debt are in dispute in this case.

Moreover, the propriety of extracting such an administrative fee was not raised until well after the debt and the levy had been established. Since the debt itself is not in dispute, a separate trial would only serve to develop the same facts already conceded. *See, American Express, supra,* 92 *N.J.Super.* at 382–383, 223 *A.2d* 515. Accordingly, proceedings under *R.* 4:59–3 and *N.J.S.A.* 2A:17–63 to direct payment of the debt are entirely appropriate. *Id.* at 382, 223 *A.2d* 515; *See also, Wilton Enterprise v. Cook's Pantry,* 230 *N.J.Super.* 126, 129, 552 *A.2d* 1031 (Law Div.1988).

The issue to be resolved in this case is whether First Fidelity had a common law right to set-off in the Defendant's account and/or whether there was created a valid consensual security interest in the account thus giving First Fidelity priority over all subsequent claims.

I have carefully reviewed and considered the arguments presented by both parties, and conclude that the administrative fee withheld by the Bank was improper. The Plaintiff is therefore entitled to receive the full amount held in the Defendant's bank account totaling $477.58.

## II.  *THE "SET OFF" AND ITS PRIORITY*

### A.  *UNDER THE COMMON LAW*

Generally, a bank has a right of set-off against "all monies or funds in its possession belonging to [a] depositor to secure payment of depositor's indebtedness to [a] bank ... only when [the] deposit is general." *Federal Deposit Ins. Corp. v. Pioneer State Bank*, 155 *N.J.Super.* 381, 389–390, 382 *A.*2d 958 (Law Div.1977); *Hudson United Bank v. House of Supreme, Inc.*, 149 *N.J.Super.* 153, 156, 373 *A.*2d 438 (Ch.Div.1977).  This right has commonly been referred to as a "banker's lien" which, although not technically a lien, is regarded as a "possessory lien" only entitling the bank to retain possession of the deposit for application of a proper set-off. *Federal Deposit Ins. Corp.*, 155 *N.J.Super.* at 389, 382 *A.*2d 958.

It has long been established that a general deposit is created when a depositor pays money to a bank to be repaid upon demand; whether it be in whole or in part. *Maurello v. Broadway Bank and Trust Co.*, 114 *N.J.L.* 167, 172–173, 176 *A.* 391 (1935).  Title to the money passes from the depositor to the bank and thus the bank becomes the debtor to the depositor. *Maurello*, 114 *N.J.L.* at 172–173, 176 *A.* 391; *Federal Deposit Ins. Corp.*, 155 *N.J.Super.* at 389–390, 382 *A.*2d 958.  Consequently, if a depositor defaults on an obligation, the bank may satisfy any

indebtedness from the depositor's account provided that: (1) the funds to be set-off are the property of the debtor; (2) a mutuality of obligation [2] exists between the debtor and creditor; and (3) the existing indebtedness is due and owing. *Federal Deposit Ins. Corp.*, 155 *N.J.Super.* at 390, 382 *A.2d* 958; *See also*, Barkley Clark, *The Law of Bank Deposits, Collections & Credit Cards* sec. 14–01 at 14–2 (3rd ed. 1990).

In this case, the checking account in dispute is clearly a general deposit account, necessarily giving rise to the debtor/creditor relationship. However, the Bank concedes that the disputed charge was not assessed and did not crystalize until the moment the account was levied upon by the constable. Consequently, it cannot reasonably claim an indebtedness, express or implied, was due and owing *prior* to the time of the levy.

A bank's deposit account service charges are established by the bank in accord with federal and state banking standards. 12 C.F.R. sec 7.8000 (1994). Simply because a depositor has signed a standard signature card or has agreed to pay certain service charges cannot create the existence of a debt. Since no debt existed until *after* the levy, the Bank's claim for a common law right of set-off must fail.[3]

## B. *UNDER STATUTORY LAW*

In addition to asserting a common law right of set-off, the Bank also claims a valid perfected security interest in the account. Since Article 9 of the *U.C.C.* specifically excludes set-offs and security interests in deposit accounts,[4] that position must fail

---

[2] The mutuality of obligation is not in dispute.

[3] *Cf., Associates Discount Corporation v. Fidelity Union Trust Company*, 111 *N.J.Super.* 353, 268 *A.2d* 330 (Law Div.1970) (Bank, as general creditor, was *not* entitled to abrogate a lender's security interest simply by having a right to and opportunity for a set-off.)

[4] *N.J.S.A.* 12A:9–104.

unless a consensual security interest in the account can be demonstrated.[5] However, a consensual security interest requires an express grant, which may be contained in a security instrument itself or in a "deposit contract".[6]

The depositor's "signature card" containing the mutual rights and obligations of the parties, cannot reasonably be construed to create a security interest.[7] Nor does the Personal Account Agreement between the parties, specifically its provision for service fees,

---

[5] While there are no New Jersey or Third Circuit cases which address this issue, *see, Gillman v. Chase Manhattan Bank, N.A.,* 73 *N.Y.*2d 1, 537 *N.Y.S.*2d 787, 534 *N.E.*2d 824 (N.Y.1988) (Consensual non-Article 9 security interest in demand deposit account created by specific language in security agreement); Clark, *op. cit.,* sec. 14.12; *and see, Balzano v. United Bank of Denver, N.A.,* 761 *P.*2d 229 (Colo.Ct.App.1988).

[6] *Compare, Gillman, supra,* 537 *N.Y.S.*2d at 794, 534 *N.E.*2d at 831; *See also, Clark, op. cit.,* sec. 14.14 and *Supplement* 14.14 which suggests "[t]he undersigned depositor hereby grants to the bank a security interest in the deposit account to secure all obligations owing by the depositor to the bank, now or in the future", as adequate for this purpose.

[7] The relevant text of the signature card provides: 1. I (we) will pay the Bank's service charges in effect from time to time. 2. Bank will not give credit for deposited items until funds are finally collected by Bank. 3. Bank may accept oral, telephone, or electronic orders to deposit, withdraw, or transfer funds. Such orders will be as effective as if written, Bank's records shall be determinative of the validity of such orders. 4. Bank, or any one or more of us, is authorized to endorse, and deposit for credit, items payable to me (if individual), one or more of us (if joint), or the entity in which this account is titled. 5. Any one of us may stop payment on a check drawn on this account, even if such check was drawn by another of us. Bank assumes no liability for failure to stop payment on any such check drawn on this account unless I have properly communicated to Bank all relevant date requested by Bank in sufficient time to place the stop. 6. If Joint Account ... 7. I agree to be bound by all rules and regulation and any amendments thereto promulgated by Federal and state authorities, the Federal Deposit Insurance Corporation, and Bank. 8. I will not draw checks that are "post dated" Bank may, however, pay post dated items at its discretion and without liability. 9. Bank is authorized to pay checks which are "stale dated" as defined within the Uniform Commercial Code at its discretion and without liability. 10. I agree that should this account become overdrawn for any reason, to immediately pay to Bank all amounts [encompassing] such overdraft.

contain the specific language necessary to create a consensual security interest. The language of the Agreement[8] limits any security interest to service fees that have been incurred in the past, and does not apply prospectively to future obligations of the debtor. Therefore, since no debt existed until after the levy, the security interest provided for by the Agreement had not attached. Accordingly, there is no legal authority from which the Bank could assert priority over the levying judgment creditor. As such, all monies on deposit at the time of the levy are rightfully due and must be turned over to the judgment creditor.

Plaintiff shall submit the appropriate Order requiring a turn-over of funds.

---

8 "The Bank has a security interest in your Account for any fees you haven't paid."