179 N.J. Super. 242 (1981)
431 A.2d 183
THOMAS F. KEEGAN, ADMINISTRATOR C.T.A. OF THE ESTATE OF EDWARD J. KEEGAN, ETC. PLAINTIFF,
v.
ESTATE OF EDWARD J. KEEGAN, ET ALS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Hunterdon County.
Decided April 7, 1981.
*244 Nathan Reibel for plaintiff.
Andrew M. Epstein for defendant City National Bank (Epstein, Epstein, Brown, Bosek & Turndorf, attorneys).
Stanley F. Friedman for trustees of trust fund for the benefit of bank shareholders, as intervenors (Simon, Schwartz, Sarver & Friedman, attorneys).
DREIER, J.S.C.
This case has a complicated factual and legal history, but raises here only one issue  the nature of the common law right of set-off. We are asked to decide the following: Where a party owes money to a bank and such party owns shares of stock which come into possession of the bank, can the bank claim those shares against the debt under its common law right of set-off? Due to the necessity of an immediate resolution of the problem, this court answered the question in the negative, with the understanding that a written opinion would follow.
Edward Keegan and his wife Barbara Ann died simultaneously in an airplane accident in 1976. Their deaths left their son Thomas as the administrator of their estates, faced with a tangle of lawsuits arising chiefly out of the alleged defalcation of Edward Keegan during his tenure as chief executive officer of the State Bank of Manville. It is the intersection of two of these lawsuits which raises the issue before this court today.
In March 1977 trustees of a trust fund for the benefit of the shareholders of the State Bank of Manville (hereinafter Manville trustees) began a Hunterdon County Law Division suit against the two estates seeking damages for alleged fraud. In April 1977 Thomas Keegan, as administrator of the estates, filed a complaint in the present entitled action in Hunterdon County, Chancery Division, seeking, among other things to have the estates declared insolvent. Judgment of insolvency was not entered until May 1978. Prior to the judgment of insolvency, and prior also to judgment in the fraud action, the Manville *245 trustees caused a levy to be made upon shares of stock in the State Bank of Manville owned by Edward and Barbara Ann Keegan and located in a safe deposit box in the bank. The box was drilled open in the presence of a representative of the estates and the shares removed. Since that time the Manville trustees have treated the stock as being part of the trust fund established to compensate shareholders of the bank for the actions of Keegan.
A judgment of fraud was subsequently entered in the Hunterdon Law Division action against the two estates and in favor of the Manville trustees.[1] Attorneys for the estates moved in the Law Division action to vacate the judgment and to set aside the Manville trustees' execution. Both applications were denied. Attorneys for the estates then moved in the presently entitled Chancery Division action for a stay of execution.
On January 17, 1978 the then Chancery Division judge ordered the bank not to proceed with execution but to sell the stock in the name of the estates, with the proceeds to be held until further determination of the court. The Manville trustees have filed this motion seeking declaration that their levy caused the stock to become part of the property of the trust fund. They argue that their levy was the exercise of a right of set-off and the stock became theirs as of the moment of levy. They argue that the Chancery Division order did not adjudicate ownership of the proceeds, and that such adjudication should now be made by this court.
In opposition to the Manville trustees, the administrator of the estates and City National Bank, a creditor of the estates, argue that the trustees had no greater right in the stock than any other judgment creditor of an insolvent estate and that *246 distribution of the proceeds of the stock to them would constitute an unlawful preference, relying on R. 4:91-1 through R. 4:91-5. See, also, 7 N.J. Practice (Clapp, Wills and Administration) (3 ed. 1962), §§ 1340-1346. Indirectly, then, these opponents of the Manville trustees attack the characterization of the execution as an exercise of set-off, for it is established law that where a set-off right exists, a transfer of funds to the holder of that right is not a preference. Tumarkin v. First Nat'l State Bank of N.J., 142 N.J. Super. 304, 309-310 (App.Div. 1976), aff'd 75 N.J. 373 (1978). Cf. 11 U.S.C.A. § 553; N.J.S.A. 14A:14-8(1).
The threshold question, then, is whether there can be a set-off of debt against stock. Definitionally a set-off is:
That right which exists between two parties each of whom under an independent contract owes an ascertained amount to the other to set-off his respective debts by way of a mutual deduction so that in any action brought for the larger debt, the residue only, after such deduction, shall be recovered. [John Wills, Inc. v. Citizens Nat'l Bank of Netcong, 125 N.J.L. 546, 548 (E. & A. 1940), quoting from 24 R.C.L. 792  emphasis supplied]
See, also, Receivers v. Paterson Gas Light Co., 23 N.J.L. 283, 289 (Sup.Ct. 1852).
The Manville trustees rely on Federal Deposit Ins. Corp. v. Pioneer State Bank, 155 N.J. Super. 381 (Law Div. 1977). There Federal Deposit Ins. Corp. as liquidator of the insolvent Bank of Bloomfield, brought an action to recover as successor in interest on certificates of deposit made by defendant, Pioneer State Bank in favor of the insolvent bank. Pioneer countered that it had a right of set-off against the certificates of deposit, by reason of an agreement and loans between Pioneer and Bloomfield arising from the sale of machinery leasing agreements by Bloomfield to Pioneer. This sale was "with recourse" under an agreement in which Bloomfield undertook to repurchase any delinquent loans and to indemnify Pioneer for any resulting losses. The court properly upheld Pioneer's right of set-off, holding that a bank has a right of set-off against all monies or *247 funds in its possession belonging to a depositor to secure the payment of the depositor's indebtedness to the bank.[2]
Stock, the trustees assert, is essentially the same as certificates of deposit in the FDIC case. While this may be so for some purposes, a crucial difference exists in this context. A fixed amount is owing to the holder of certificate of deposit; shares of stock are evidence of ownership, not of debt. A stockholder is entitled only to a percentage of the ownership rights of a corporation or, if the stock is sold, that sum which in the judgment of a purchaser the stock is worth at the time of purchase. With no "ascertained amount" upon which to calculate net indebtedness, no set-off is possible. See John Wills, Inc. v. Citizens Nat'l Bank of Netcong, supra.
The Manville trustees did not obtain ownership of the stock by their attempted set-off, since no set-off took place. What effect was achieved by their execution remains to be determined under the usual priority rules. Under the circumstances it will be decided in the forthcoming insolvency proceedings.
NOTES
[1] This judgment was for $10,464.99, plus costs and interest. In a later judgment the shareholders were awarded in excess of $500,000 additional to the above. The Manville trustees, as they anticipated, have been unable to collect on these judgments.
[2] Even if the debt owed the bank had not matured, the right of set-off would still exist. Tumarkin, supra, at 308, n. 1.