657 A.2d 452

ALL AMERICAN AUTO SALVAGE, PLAINTIFF–APPELLANT,
v. CAMP'S AUTO WRECKERS, DEFENDANT.

CITIBANK, SOUTH DAKOTA, N.A., PLAINTIFF–RESPONDENT,
v. LISA A. COFFEY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued April 3, 1995—Decided May 4, 1995.

Before Judges DREIER, VILLANUEVA and WEFING.

*Steven P. McCabe* argued the cause for appellant All American Auto Salvage (*Pressler & Pressler,* attorneys; *Mr. McCabe* on the brief).

*Michael A. Lampert* argued the cause for respondent-garnishee First Fidelity Bank, N.A. (*McManimon & Scotland,* attorneys; *Mr. Lampert* and *Carl E. Ailara,* Jr., on the brief).

*Michael A. Lampert* argued the cause for appellant-garnishee First Fidelity Bank, N.A. (*McManimon & Scotland,* attorney; *Mr. Lampert* and *Carl E. Ailara, Jr.,* on the brief).

*Steven P. McCabe* argued the cause for respondent Citibank, South Dakota, N.A., (*Pressler & Pressler,* attorneys; *Mr. McCabe* on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

In the second of the two cases before us, First Fidelity Bank, N.A., garnishee under a levy made by plaintiff Citibank, South Dakota, N.A. on the account of defendant Lisa A. Coffey, appeals

from a decision of Judge Wolfson in the Special Civil Part holding that a levying creditor's right to satisfaction of its judgment is superior to that of the garnishee bank for contractual service fees. Plaintiff obtained a default judgment against defendant in the amount of $1,707.28 because of defendant's failure to pay charges on her Citibank Visa Card. Plaintiff then levied on defendant's bank account in First Fidelity Bank, N.A. Defendant had $477.58 on deposit as of the date of the levy. The garnishee bank honored the levy for the amount of $417.58, after deducting its $60 processing fee. The sole issue in this case is whether the levying creditor or the bank has priority concerning this $60 portion of the balance on deposit.

While the amount is small, we have been informed that in the garnishee bank alone there are over 15,000 such levies per year warranting a charge of over $900,000 of which in fifty-five percent of the cases there are some funds in the account from which to deduct the $60 charge. However, the garnishee bank maintains a department with six full time employees who do nothing but process claims by levying creditors.

Judge Wolfson rejected the garnishee bank's claim to priority and directed that the bank turn over to the levying creditor the full balance on deposit before deduction for the service charge.[2] We here affirm Judge Wolfson's order, substantially on the basis of his opinion published at 281 *N.J.Super.* 311, 657 *A.*2d 475 (Law Div.1994). In view of additional arguments raised on this appeal, however, we expand upon the explanations he has given.

In the first-listed matter before us, *All American Auto Salvage v. Camp's Auto Wreckers,* plaintiff also levied on defendant's deposit account held by the garnishee, First Fidelity Bank, N.A. The balance in the account was $940.65, and the levy was for the

---

[2] Where the facts are in dispute, it would not be appropriate to determine disputed debt issues at the hearing of a turnover motion, and a plenary hearing would be necessary.

amount of $1,068.10. The bank again deducted its $60 fee and reported an amount of $880.65 to the court.

In that case, the trial judge accepted the garnishee's arguments that its levying fee had priority over the rights of the levying creditor. The court found that the deposit was a general deposit and that the bank had a right of set-off to secure payment of its depositor's indebtedness. The depositor's agreement to the $60 levy fee and the bank's right to set-off this amount against the account was found to be superior to plaintiff's right as a levying creditor since plaintiff's rights could rise no higher than those of the depositor which had agreed to the prior deduction of the fee. In *All American Auto Salvage v. Camp's Auto Wreckers*, we reverse the order deducting the $60 charge and remand with a direction that the levy be honored in the full amount of $940.65.

In both cases the garnishee bank also asserted a security interest in the account. The garnishee bank claims, and both courts recognized, that the security interest, if any, must arise solely under the common law rather than the Uniform Commercial Code, *N.J.S.A.* 12A:9–101 *et seq.* Particularly, *N.J.S.A.* 12A:9–104(i) excludes application of article nine "to any right of set-off." *N.J.S.A.* 12A:9–104(1) excludes application to "a transfer of any interest in a deposit account," defined in *N.J.S.A.* 12A:9–105(1)(e) as including a demand deposit account. In these cases, the banks' claimed transfers of security interests in both accounts are, there-fore, not governed by the Code.

The signature card signed by Lisa Coffey in the *Citibank, South Dakota, N.A.* case incorporated the personal account agreement of First Fidelity Bank, N.A. in which under the heading "service fees," the depositor acknowledged: "The Bank has a security interest in your Account for any fees you haven't paid." In the *All American Auto Salvage* case, defendant Camp's Auto Wreckers likewise incorporated into its deposit agreement the small business account fees which in the March 19, 1993 amendment stated: "The Bank has a security interest in any service fees or charges to the account."

In his opinion, Judge Wolfson noted that the phraseology of the security interest language in the personal account apparently referred only to past charges and excluded them on that basis.[3] We prefer to treat the general issue of whether the security interest allegedly created in either situation gives the bank priority over a levying judgment creditor, apart from any claim the bank may have to its right of set-off in these cases. We here determine that there is no enhanced right that the bank receives by claiming a security interest in an account over which the bank maintains no possessory interest to control withdrawals.[4]

Where the Legislature or common law grants priority to a particular lien, the authority for such priority is clear. Examples which come to mind are the common-law attorney's lien, later confirmed in *N.J.S.A.* 2A:13–5, common-law and statutory landlords' and similar liens, *N.J.S.A.* 2A:33–1 *et seq.*, *N.J.S.A.* 2A:42–1 *et seq.*, *N.J.S.A.* 2A:44–165 *et seq.;* aircraft liens, *N.J.S.A.* 2A:44–1 *et seq.;* garage keepers liens, *N.J.S.A.* 2A:44–20 *et seq.;* the common law artisan's liens (discussed in the New Jersey Official Study Comment to *N.J.S.A.* 12A:9–310, paragraph 6). *See generally* comments to *N.J.S.A.* 12A:9–310. The statutory or common law liens recognized as having priorities over the established rights of others are all possessory, and all relate to services that have been performed. While the bank has technical possession of a depositor's demand deposit account, it has no right to prevent withdrawal by the depositor where there are no current charges due as of the time a levy is made. The depositor has the

---

[3] Judge Wolfson correctly noted that there could be a consensual common law security interest created outside of the Uniform Commercial Code. 281 *N.J.Super.* at 316, notes 5 and 6, 657 *A.2d* at 477, notes 5 and 6. He merely determined that the agreement before him did not create such an interest. We need not pass upon this determination since we find that even if the interest had been created, such a common-law security interest, without a right of the bank to control the account as just noted, would not be accorded priority.

[4] An example of such possessory interest would be a cash collateral account held as additional security for a commercial loan and over which the bank exercises a right of sole withdrawal or as a cosignatory with the borrower.

unfettered right to withdraw the entire amount on demand. Furthermore, the bank's processing services for which it sought to impose its "lien" were to be performed after the levy, not before.

Where the Legislature has intended to give a processor of a levy the right to charge for its efforts, it has done so by statute. *See N.J.S.A.* 2A:17–53, permitting a five percent deduction for an employer from the amount of a wage execution as compensation "for expense and services in payment of the execution." Without this statute, we doubt that an employer merely could write into all employment agreements that it retained a security interest in all wages to be paid to its employees for a processing fee in the event of a wage execution.

One of the principal cases that could define the garnishee's right of set-off is *Tumarkin v. First Nat'l State Bank of N.J.*, 142 *N.J.Super.* 304, 361 *A.*2d 550 (App.Div.1976), *aff'd*, 75 *N.J.* 373, 382 *A.*2d 1122 (1978). In that case the defendant depository bank set off the balance in the bank account, $21,590.10, against the outstanding debt of its depositor, Scientific Restaurant Management Corp., to the bank. The set-off was occasioned by the depositor's assignment for the benefit of creditors pursuant to *N.J.S.A.* 2A:19–1 *et seq.* Plaintiff, the assignee for the benefit of the creditors, claimed that under *N.J.S.A.* 2A:19–14 the assignee stood in the shoes of a levying creditor, and thus the bank had no right to effect the set-off.

The Appellate Division disagreed and determined that the assignment caused the debt to mature, but even had it not, the indebtedness of Scientific Restaurant Management Corp. to the bank and the bank's debt to its depositor pursuant to the demand account created but a single net obligation. *See Marmon Fanning Co. v. The Peoples Nat'l Bank of Elizabeth*, 106 *N.J.Eq.* 170, 173, 150 *A.* 402 (E. & A.1930) (cited by *Tumarkin*, 142 *N.J.Super.* at 307, 361 *A.*2d 550). This court further noted that both the federal bankruptcy law and the corporation law concerning statutory receivers expressly authorized a set-off of mutual debts and credits, citing 11 *U.S.C.A.* § 108(a) and *N.J.S.A.* 14A:14–8(1). The

court further explained that the Bankruptcy Act and Corporation Act did not create new rights, but merely recognized a generally accepted principle " 'that a person against whom a claim is asserted by another may use his own claim against that person in full or partial satisfaction of the asserted claim.' " 142 *N.J.Super.* at 308–309, 361 *A.*2d 550 (quoting 9 *Am.Jur.2d Bankruptcy* § 509 at 394 (1963)).

On appeal to the Supreme Court, the Appellate Division decision was affirmed on the opinion below by a three vote majority of a five justice quorum. 75 *N.J.* at 373, 382 *A.*2d 1122. *See R.* 2:13–2(a). Justices Pashman and Clifford dissented, arguing that the assignment triggered the default which in turn accelerated the balance due on the loan; therefore, the assignee's rights preceded the bank's right to assert the balance due in excess of the current month's payment. *Id.* at 375, 382 *A.*2d 1122. This, however, was a minority view.

We have dwelled on the *Tumarkin* case because both sides argue from it that the garnishee in the cases before us either possessed or lacked the right to set off the deposit against the levy processing fee and thus defeat the right of the levying creditor to the extent of the $60 charge. The garnishee bank states that it is in no different position from the First National State Bank in *Tumarkin.* It imposed a fee that was automatically triggered by the levy and thus was an indebtedness of its depositor to the bank, equivalent to the right of set-off by the bank in *Tumarkin.* Similarly, the assignee for the benefit of creditors in *Tumarkin* was exercising his right which was equivalent to that of a levying judgment creditor, which is the right claimed by both of the plaintiffs in the cases before us. Thus, reasons the bank, we are bound by *Tumarkin* to give priority to its $60 fee.

The creditors, however, claim that the charge was not a current debt in the same nature as was the outstanding loan in *Tumarkin.* As noted earlier, the bank was charging for its processing services to be performed after it received the levy, not for any money it

had already lent. There thus was no matured debt [5] against which there could be an offset.

We agree with the position advanced by the levying creditors that they have levied on the full balance in the depositors' accounts. The bank had no right of offset as a result of the levy for a contractual charge it had the right to make for future services that the bank would perform. This claim is dissimilar to the outstanding loan in *Tumarkin* where there was a current debt because the bank had actually lent the full amount claimed before the levy. In reaching this decision, we are not unmindful of the equity of the garnishee bank's position. It is not dissimilar to that of the employer in a wage execution case where the Legislature has permitted a five percent deduction for a processing fee. The remedy, however, lies with the Legislature to authorize or direct a similar fee. The existing state of the statutory and common law gives priority to the levying creditor.

With these additional explanations to meet arguments made beyond those expressed to the trial judge, and subject to our expressions herein, we affirm the order in *Citibank, South Dakota, N.A. v. Coffey* substantially for the reasons expressed by Judge Wolfson in his opinion reported at 281 *N.J.Super.* 311, 657 *A.*2d 475 (Law Div.1994). As noted earlier, we reverse the order in *All American Auto Salvage v. Camp's Auto Wreckers* and remand for the entry of an amended order in accordance with this opinion.

---

[5] As we also noted earlier, in *Tumarkin* the Appellate Division stated that there would be a right of set-off, even if the debt had not matured as of the date the corporation was adjudged insolvent. 142 *N.J.Super.* at 308, 361 *A.*2d 550. *See also Keegan v. Estate of Keegan*, 179 *N.J.Super.* 242, 246–247 n. 2, 431 *A.*2d 183 (Ch.Div.1981). But in *Tumarkin* the entire debt was already owing, only the payment terms were altered by the assignment for the benefit of creditors. The court in *Tumarkin* treated the accelerated debt as mature, and the Supreme Court affirmed. This issue may require reanalysis in an appropriate case in the future, but that issue is not before us.