679 A.2d 627

ALL AMERICAN AUTO SALVAGE, PLAINTIFF–RESPONDENT,
v. CAMP'S AUTO WRECKERS, DEFENDANT.

CITIBANK, SOUTH DAKOTA, N.A., PLAINTIFF–RESPONDENT,
v. LISA A. COFFEY, DEFENDANT.

Argued January 30, 1996—Decided August 1, 1996.

*Michael A. Lampert* argued the cause for appellant, First Fidelity Bank, N.A. (*Saul, Ewing, Remick & Saul*, attorneys; *Mr. Lampert* and *Carl E. Ailara, Jr.*, on the briefs).

*Steven P. McCabe* argued the cause for respondents (*Pressler & Pressler*, attorneys).

*Michael F. Spicer* argued the cause for *amicus curiae*, New Jersey Bankers Association (*Jamieson, Moore, Peskin & Spicer*, attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The primary issue is whether a bank may deduct a processing fee from a judgment debtor's general deposit account before paying the balance to a levying creditor. Another issue is whether the Superior Court may decide the issue in a summary proceeding under *N.J.S.A.* 2A:17–63.

The appeal involves two cases that were consolidated in the Appellate Division. In the first case, *All American Auto Salvage v. Camp's Autowreckers*, a judgment creditor, All American Auto Salvage (All American) levied on the account of Camp's Auto Wreckers (Camp's) at First Fidelity. The Special Civil Part of the

Law Division permitted First Fidelity to deduct a processing fee before paying the balance in Camp's account. In the second case, *Citibank, South Dakota, N.A. v. Coffey,* the Special Civil Part ruled that First Fidelity had acted improperly in deducting a processing fee from the account of Lisa Coffey before paying the balance to the levying creditor, Citibank, South Dakota, N.A. (Citibank).

The Appellate Division held that First Fidelity could not deduct its processing fee before honoring the levy. It thus affirmed the order in *Coffey* and reversed and remanded in *All American Auto Salvage v. Camp's Auto Wreckers,* 281 *N.J.Super.* 266, 274, 657 *A.*2d 452 (App.Div.1995). We granted First Fidelity's petition for certification, 142 *N.J.* 515, 665 *A.*2d 1108 (1995), and now reverse both judgments.

## I.

In the lead case, *All American Auto,* defendant, Camp's, opened a small-business account with First Fidelity on November 8, 1991. Pursuant to the deposit agreement, Camp's agreed to be bound by "all the rules, regulations, conditions, limitations, requirements and agreements which are heretofore and hereafter adopted by the Bank." Camp's also executed a resolution stating:

That any account of any type whatsoever that this corporation establishes at the Bank secures any and all indebtedness and liability of this corporation to Bank, however and whenever incurred or evidenced, whether direct or indirect, absolute or contingent, due, or to become due, and the corporation transfers and coveys to Bank all balances, credits, deposits, monies or items of any type whatsoever, now or hereafter, held by the Bank and Bank is authorized at any time to charge such indebtedness or liability against any such accounts or items whether or not the same is then due, and the Bank shall not be liable for dishonoring items where the making of such charge or charges results in there being insufficient funds in said account(s) to honor such items.

On March 19, 1993, First Fidelity amended its small-business-account fee-schedule. The new schedule stated that "[t]he Bank has a security interest in any service fees or charges to the account." First Fidelity charges a service fee of $60 for responding to levies on its depositors' accounts.

On August 17, 1993, All American obtained a judgment against Camp's. By serving a writ of execution, All American levied on Camp's account at First Fidelity for $1,068.10. First Fidelity investigated to ensure that the levy was on the correct account and searched its Customer Information System for any set offs or unpaid fees. It deducted $60 from the account balance of $940.65 for those processing services, leaving $880.65 to satisfy partially the levy. The Special Civil Part denied All American's motion to turn over the entire amount in Camp's account without deducting the processing fee.

First Fidelity processes over 15,000 levies annually. It maintains a separate department with six full-time employees whose only responsibility is to process claims of levying creditors. Although the processing fee is minimal, it adds up to a cumulative charge of over $900,000. In 45% of the cases, although no levy or processing fee is ultimately paid, the bank must still investigate and notify the Sheriff and the judgment creditor of the absence of an account relationship or available funds.

In *Citibank, South Dakota, N.A. v. Coffey,* the defendant, Lisa Coffey, opened a personal account with First Fidelity. Coffey agreed to be bound by "all rules and regulations and any amendments thereto promulgated by Federal and state authorities, the Federal Deposit Insurance Corporation, and Bank." The Personal Account Agreement stated:

> You agree to pay any service fees which apply to your Account and to pay special fees for services such as stop payment orders and dishonored checks. The Bank has a security interest in your account for any fees you haven't paid. The amount of the fees may change from time to time. You will be given prior notice of any change in fees. The notice may be sent by mail or included with the periodic statement of your Account, if one is sent.

The Agreement also provided that

> [i]f you owe the Bank money for any reason, the Bank can, without prior notice, charge any Account you have with the Bank for the amount owed.

Coffey failed to pay charges on her Citibank Visa Card. Citibank obtained a $1,707.28 default judgment against Coffey, and levied on the $477.58 balance in her First Fidelity account. First

Fidelity investigated the matter and deducted its $60 processing fee.

The trial court granted Citibank's motion for an order turning over the balance of the account without a deduction for First Fidelity's processing fee. 281 *N.J.Super.* 311, 314, 657 A.2d 475 (Law Div.1994).

In *Coffey,* the Special Civil Part held in part that Coffey was not indebted for the processing fees until after Citibank had levied on the account. Thus, First Fidelity did not have a common-law right to set off the processing fee. *Id.* at 315, 657 A.2d 475. The court also determined that the Bank's security interest in the account did not give it priority over the levying creditor. According to the court, the language of the deposit agreement applied only to fees incurred in the past, and "[s]ince no debt existed until after the levy, the security interest provided for by the Agreement had not attached." *Id.* at 317, 657 A.2d 475.

The Appellate Division affirmed substantially for the reasons stated by the Special Civil Part. 281 *N.J.Super.* 266, 269, 657 A.2d 452 (App.Div.1995). It supplemented its opinion by discussing the issue "whether the security interest allegedly created in either situation gives the bank priority over a levying judgment creditor." *Id.* at 271, 657 A.2d 452. The court rejected the bank's claim of a security interest, reasoning that the bank had no possessory interest to control withdrawals, a prerequisite to a perfected security interest.

## II.

First Fidelity claims that both a common-law security interest and a right of set off support its deduction of the processing fees. We turn first to common-law security interests.

## A.

As defined by statute, a "security interest" is "an interest in personal property or fixtures which secures payment or perfor-

mance of an obligation." *N.J.S.A.* 12A:1–201(37). *N.J.S.A.* 12A:9–104(k) specifically excludes security interests in deposit accounts. "Such transactions are often quite special, do not fit easily under a general commercial statute and are adequately covered by existing law." *N.J.S.A.* 12A:9–104, 1972 Official Comment to U.C.C., ¶ 7; *see also Pittsburgh Nat'l Bank v. United States,* 657 *F.*2d 36, 39 (3d Cir.1981) (stating that Article 9 of the UCC does not apply to bank's set off of amount due on loan against depositor's checking account); *Gillman v. Chase Manhattan Bank,* 73 *N.Y.*2d 1, 537 *N.Y.S.*2d 787, 794 n. 1, 534 *N.E.*2d 824, 831 n. 1 (1988) (same); *Duncan Box & Lumber Co. v. Applied Energies, Inc.,* 165 *W.Va.* 473, 270 *S.E.*2d 140, 142 (1980) (holding that UCC does not apply to security interests in deposit accounts even when created for the purpose of providing collateral for the bank); Barkley Clark & Barbara Clark, The Law of Bank Deposits, Collections and Credit Cards ¶ 18.03, at 18–6 (Revised ed. 1995 & Supp.1996).

Under the common law, however, parties may provide specifically for a security interest in an agreement. *Gillman, supra,* 537 *N.Y.S.*2d at 794, 534 *N.E.*2d at 831 (finding security interest in demand deposit account created by language in security agreement). Security interests in general deposit accounts may arise by a pledge or an assignment. *See Peoples Nat'l Bank v. United States,* 777 *F.*2d 459, 461 (9th Cir.1985). First Fidelity does not contend that a security interest arose by assignment. It claims, however, that such an interest arose from the depositor's pledge of sufficient funds in the account to satisfy the processing fees.

Generally speaking, a pledge is a security interest in personal property created by a bailment to secure payment of a debt or performance of a service. *See* Ray A. Brown, The Law of Personal Property § 15.1, at 469 (3d ed. 1975); 72 *CJS* Pledges § 1 (1987). To be effective, a pledge requires 1) a pledgor and a pledgee; 2) a debt or obligation; 3) an agreement to create a security interest; and 4) possession of the pledged property by the

pledgee. *See CJL Co. v. Bank of Wallowa County (In re CJL Co.)*, 71 *B.R.* 261, 264 (Bankr.D.Or.1987); 72 *CJS* Pledges § 5 (1987).

No one disputes that the depositor acts as pledgor and the Bank as pledgee. The deposit agreements, moreover, create an obligation to pay for all fees related to the maintenance and disposal of the account. At issue are the final two requirements: an agreement to create a security interest and possession of the property to effectuate that interest.

The First Fidelity agreements reflect an intent to create security interests in the respective accounts. Specifically, in *All American Auto*, Camp's agreed that "any account ... that this corporation establishes at the Bank secures any and all indebtedness and liability of this corporation to the Bank." Further, the account fee schedule states that the Bank "has a security interest in any service fees or charges to the account." Similarly, in *Coffey*, the personal account agreement included a promise "to pay any service fees which apply to your Account" and gave the bank "a security interest in your account for any fees you haven't paid."

The Law Division read the *Coffey* agreement to refer only to fees past due. 281 *N.J.Super.* at 317, 657 *A.2d* 475. A more realistic reading is that the agreements were intended to confer on First Fidelity a security interest for all fees, past or future.

■ For a bank to satisfy the requirement of possession, it must have exclusive possession and control over the account. *See CJL Co., supra*, 71 *B.R.* at 264–65 (finding that bank had security interest in deposit account because bank had exclusive and unequivocal control over account); *Duncan Box, supra*, 270 *S.E.2d* at 145–46 (ruling that reserve account to which only bank had access met requirement for common-law security interest); *cf. Miller v. Wells Fargo Bank Int'l Corp.*, 540 *F.2d* 548, 563 (2d Cir.1976) (concluding that bank failed to prove it had exclusive control over overseas deposit account and thus could not claim security interest in account). When a depositor may withdraw

funds from an account, "it would be difficult, if not impossible for the bank to demonstrate that the account constitutes a pledge" of a security interest. *Duncan Box, supra*, 270 *S.E.*2d at 146 n. 11. Here, the depositors could have withdrawn the balances at any time.

Although First Fidelity intended to create security interests through the deposit agreements, it lacked exclusive possession and control over the accounts. Consequently, it did not hold security interests in the accounts.

## B.

Generally, a bank has a right of set off "against all monies or funds in its possession belonging to a depositor to secure the payment of the depositor's indebtedness to the bank." *Federal Deposit Ins. Corp. v. Pioneer State Bank*, 155 *N.J.Super.* 381, 389, 382 *A.*2d 958 (Law Div.1977); *Hudson United Bank v. House of Supreme, Inc.*, 149 *N.J.Super.* 153, 156, 373 *A.*2d 438 (Ch.Div.1977); 5A Michie on Banks and Banking Ch. 9 § 114, at 413 (1994 Replacement Volume). Our analysis of the common-law right of set off begins by recognizing that the relationship between a bank and a depositor is that of debtor and creditor. *Pagano v. United Jersey Bank*, 143 *N.J.* 220, 233, 670 *A.*2d 509 (1996); *Elsinore Shore Assocs. v. First Fidelity Bank, N.A.*, 67 *B.R.* 926, 943 (Bankr.D.N.J.1986). The deposit of funds into a general account transfers ownership of the funds to the bank and constitutes the depositor as the bank's creditor. *Ibid.* By borrowing money from the bank in a separate transaction, a depositor may also become the bank's debtor. If so, the bank may have the right to set off any amount due on the debt against the funds on deposit. *Ibid.; Pioneer State Bank, supra,* 155 *N.J.Super.* at 389, 382 *A.*2d 958; *see also* Clark, *supra*, ¶ 18.01, at 18–2 (stating that right of set off arises out of debtor-creditor relationship between bank and its depositor).

"A bank may apply general deposits to debts due it from a depositor whether such debts consist of a balance on

general account or any other indebtedness." 5A Michie, *supra,* Ch. 9 § 119a, at 473. Sometimes, a set off involves separate debts established through independent contracts. *See Elsinore Shore, supra,* 67 *B.R.* at 943; *Walter v. National City Bank,* 42 *Ohio St.*2d 524, 330 *N.E.*2d 425, 427 (1975). Here, however, both debts arise from the same source, the deposit account agreement. First Fidelity is indebted to Camp's and Coffey for the balance of funds in their accounts, and they are obligated to it for the processing fees.

In one sense, the depositors' obligation for the processing fees technically does not become due until after service of the writ of execution. 281 *N.J.Super.* at 274, 657 *A.*2d 452. Before the creditors levied on the account, Camp's and Coffey were not indebted to First Fidelity for those fees. Through the deposit agreement, however, Camp's and Coffey recognized First Fidelity's right to the fees if creditors levied on the accounts. *Cf. Schuler v. Israel,* 120 *U.S.* 506, 510, 7 *S.Ct.* 648, 650, 30 *L.Ed.* 707, 708 (1887) (finding that where debtor is insolvent at time of garnishment, bank may set off payment of any obligation whether due or not); *Elsinore Shore, supra,* 67 *B.R.* at 944 (stating that under bankruptcy provisions, claims that are contingent or not yet due may be the subject of set off). *But cf.* 5A Michie, *supra,* Ch. 9 § 115b, at 441 (stating that off set is authorized if debt is mature or past due, not if debt is only contingent). Processing fees may thus be considered as common-law set offs.

 Ordinarily, a bank must satisfy three conditions to establish a priority right to set off: the funds to be set off must be the property of the bank, the depositor must deposit the funds without restriction, and the depositor's indebtedness that gives rise to the set off must be due and owing. *Pioneer State Bank, supra,* 155 *N.J.Super.* at 390, 382 *A.*2d 958; 5A Michie, *supra,* Ch. 9 § 115a, at 433. Also, mutuality of obligation shall obtain between the debtor and creditor, meaning that the debts must involve the same parties and mutual demands must exist between the debt and the

funds deposited. *Pioneer State Bank, supra,* 155 *N.J.Super.* at 390, 382 *A.2d* 958; 5A Michie, *supra,* Ch. 9 § 115c, at 442.

All American and Citibank do not dispute that the funds on deposit belonged to First Fidelity and that the funds were unrestricted. Remaining is the issue whether the bank's claim to its fees take priority over the judgment creditor's lien. The question becomes whether a debt was "due and owing" at the time of the levies. *See Victor Werlhof Aviation Ins. v. Garlick,* 237 *Mont.* 51, 771 *P.2d* 962, 965–66 (1989) (finding that bank could set off debt at time of garnishment); *Walter v. National City Bank,* 42 *Ohio St.2d* 524, 330 *N.E.2d* 425, 427 (1975) (noting general rule that bank may set off debt despite fact that bank has been garnished by creditor).

First Fidelity claims that its fee is automatically "due and owing" simultaneously with the receipt of the garnishment. Thus, First Fidelity asserts that its set off has a prior claim to funds in the account.

All American and Citibank argue that their levies take priority over First Fidelity's fees. They contend that until service of the writ of execution, the depositors did not owe First Fidelity anything. Pointing to the depositors' right to withdraw the full balance of funds from the account, they assert that no debt was "due and owing" at the time of the levy.

Both First Fidelity and the levying creditors rely on *Tumarkin v. First National State Bank,* 75 *N.J.* 373, 382 *A.2d* 1122 (1978), *aff'g p.c.o.b.* 142 *N.J.Super.* 304, 361 *A.2d* 550 (App.Div.1976), in which we permitted a garnishee bank to set off funds on deposit against a loan that the depositor had guaranteed. The depositor, which became insolvent, made an assignment for the benefit of creditors. On learning of the assignment, the bank set off the funds on deposit against the loan. This Court sustained the bank's set off over the claim that the depositor's debt did not mature until after the levy. 75 *N.J.* at 373, 382 *A.2d* 1122. To the extent that *Tumarkin* is relevant, it supports First Fidelity's claim that the depositors' obligation to pay the processing fees

arose at the moment that All American and Citibank effected the levies on the accounts.

As a leading authority states, "the courts have generally given priority to the depository institution's right of setoff, even if setoff is not 'exercised' until after the depository institution receives notice of the garnishment." Clark, *supra*, ¶ 21.04, at 21–4. Courts in several states have recognized the fairness of permitting a bank, when confronted with a garnishment on an account, to set off an obligation to the bank against the account. An Ohio court has allowed such a set off, even in the absence of statutory authority. *McKinney, Inc. v. Wyman Corp.*, 102 *Ohio App*.3d 648, 657 *N.E.*2d 812, 814 (stating, absent statute, that bank has right of set off against depositor's account even after bank is served with garnishment notice), *appeal not allowed*, 73 *Ohio St*.3d 1449, 654 *N.E.*2d 986 (1995). Admittedly, the judicial role is more certain in a heavily-regulated industry, such as banking, when the legislature has adopted dispositive legislation. Several states have granted priority to a bank's right of set off by statute. *See Arizona Dep't of Economic Sec. v. Arizona Bank*, 133 *Ariz*. 133, 650 *P*.2d 435, 436 (1982) (holding that Ariz.Rev.Stat. Ann. § 12–1591 permitted garnishee to set off its costs for responding to a writ of garnishment); *Aspen Indus. Inc. v. Marine Midland Bank*, 52 *N.Y.*2d 575, 439 *N.Y.S.*2d 316, 320, 421 *N.E.*2d 808, 812 (1981) (holding that N.Y. Debt. & Cred. Law § 151 authorizes set off of unmatured debt upon receipt of levy); *Pan Am. Nat'l Bank v. Ridgway*, 475 *S.W.*2d 808, 808 (Tex.Civ.App.1972) (holding that Rule 677 of Texas Rules of Civil Procedure permits garnishees' costs in responding to writ to be deducted from sum owed to creditor); *see also* Clarke, *supra*, ¶ 18.02, at 18–4—18–6. The New York legislature has enacted legislation specifically addressing the issue before us. *See* N.Y. Debt. & Cred. Law § 151 (McKinney 1990 & Supp.1996) (stating, "Every debtor (bank) shall have the right upon ... (d) the issuance of any execution against any of the property of a creditor (depositor) ... to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such

debtor to such creditor, at or at any time after, the happening of the ... [writ of execution,] notwithstanding the fact that such right of set off shall not have been exercised by such debtor prior to the making, filing, or issuance, or service upon such debtor of, or of notice of, any ... issuance of execution...."); *see also Industrial Comm'r v. Five Corners Tavern, Inc.*, 47 *N.Y.*2d 639, 419 *N.Y.S.*2d 931, 934–35, 393 *N.E.*2d 1005, 1008 (1979) (stating that legislative history of § 151 indicates intent to preserve set off for use by garnishee bank against levying creditor any time after issuance of execution). We likewise believe that the issue is ripe for legislative consideration in this State.

Until such time as the legislature acts, however, we conclude that considerations of equity and economic reality support recognition of a bank's common-law right to set off a reasonable processing fee against a deposit account—even after a creditor has levied on the account.

All American and Citibank do not dispute that the contract between the Bank and its depositors requires payment of the levy-processing fee. They contend, however, that the Bank should recover the fee from its depositor in a separate action. According to defendants, deduction of the fee before satisfaction of the levy results in charging them the fee.

The fee, however, is more properly viewed as a charge to each depositor through the depositor's agreement with the bank. That the fee reduces the balance available to defendants is incidental. The creditors still have a valid judgment against each debtor and may pursue other assets of the debtor to satisfy the judgment.

Granting banks a priority in common-law set offs of levy processing fees is both fair and reasonable. To process the payment of the creditor's levy, a bank incurs costs. The costs are real. Someone must bear them. By agreement with its customers, the bank understandably tries to pass those costs to the depositors who incur them. When the funds on deposit suffice to pay both the levy and the processing fees, the bank charges the fees to the account and pays the levying creditor the balance up to the

amount of the levy. In that case, the depositor pays the processing fee. If, however, the funds in the account are not sufficient both to satisfy the levy and the processing fees, and the bank is prohibited from offsetting the fee, the inevitable result will be that the bank will pass those costs to other depositors as part of the cost of doing business.

As between the bank and the levying creditor, the creditors fairly should bear the costs of processing a levy. Creditors control the risk of default by selecting the debtors with whom they do business. Here, the creditors, Citibank and All American, can distribute the risk of default to all debtors by increasing the cost of credit in the future.

The amount of the processing fee, moreover, is small. As inconvenient as levying on additional assets may be for the creditor, it would be even more inconvenient for First Fidelity to institute a separate action for so small an amount. Requiring banks to bring a separate action would waste judicial resources. *See Arizona Dep't of Economic Sec., supra*, 650 *P.*2d at 437 (vindicating deduction from depositor's account rather than requiring separate action, acknowledging the adverse effects on the judicial system of requiring separate action against depositor).

Our conclusion that First Fidelity may set off the processing fees is consistent with the general principle that a garnishor's rights can rise no higher than the rights of the debtor. *Russell v. Fred G. Pohl Co.*, 7 *N.J.* 32, 41–42, 80 *A.*2d 191 (1951). Here, Camp's and Coffey agreed to pay a $60 processing fee if a judgment creditor levied on their accounts. When All American and Citibank levied on the accounts, First Fidelity was entitled to deduct the processing fee. The levying creditors possess no greater rights to the funds in the accounts than the depositors. Consequently, the creditors would be entitled to those funds only after First Fidelity deducted the processing fees.

The issue of the relative rights of banks, their depositors, and judgment creditors to funds on deposit is a matter suited for legislative treatment. As previously indicated, *supra* at 26–27,

679 *A.*2d at 632–33, some state legislatures have expressly granted banks the right to deduct fees before paying funds on deposit to levying creditors. Other legislatures have granted banks security interests in deposit accounts. *See Cal. Com.Code* § 9104 (1990) (including "deposit accounts" in the types of property covered by Article 9 security interests); *Haw.Rev.Stat.* § 490:9–104 (1995) (same); *Ill.Rev.Stat.* ch. 26, para. 9–104 (1993) (same); *La.Rev. Stat.Ann.* § 10:9–104 (West 1993) (same); *see also* 5A Michie, *supra,* at § 14–10. We commend consideration of the issue to the Legislature.

## III.

Finally, we turn to First Fidelity's contention that this dispute should have been adjudicated in a plenary hearing, not in the context of a turnover motion under *N.J.S.A.* 2A:17–63. Neither the levies nor the debts are disputed. We therefore agree with the lower courts that plenary hearings in these cases are unnecessary. 281 *N.J.Super.* at 313 n. 1, 657 *A.*2d 475.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for entry of a judgment for First Fidelity.

*For reversal and remandment*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.